IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MICHAEL ARTHUR HOLTRY,**

      **Plaintiff,**

      vs.                                                                      Civ. No. 21-120 JFR

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 18)[2] filed June 25, 2021, in connection with Plaintiff's *Motion to Reverse and Remand, With Supporting Memorandum,* filed November 21, 2021. Doc. 27. Defendant filed a Response on February 11, 2022. Doc. 31. Plaintiff filed a Reply on March 28, 2022. Doc. 33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and is **DENIED**.

### **I. Background and Procedural Record**

Plaintiff Michael Holtry (Mr. Holtry) alleges that he became disabled on March 15, 2018, at the age of fifty-two and six months, because of post-traumatic stress disorder ("PTSD"), anxiety, depression, AC joint dislocation of right arm, dyslexia, and neuropathy. Tr. 13, 300-

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 6, 8, 12.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 18), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

301.  Mr. Holtry completed a GED in 1980.  Tr. 301.  Mr. Holtry worked in construction as a heavy equipment operator.  Tr. 302, 332-38.  Mr. Holtry stopped working on October 15, 2015, because of his medical conditions.  Tr. 301.

On December 13, 2018, Mr. Holtry protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  Tr. 237-43, 247-54.  On March 15, 2019, Mr. Holtry's applications were denied.  Tr. 89, 90, 91-106, 107-23, 167-71.  They were denied again at reconsideration on August 12, 2019.  Tr. 123, 125, 127-44, 145-62, 175-79, 180-85.  Upon Mr. Holtry's request, Administrative Law Judge (ALJ) J. Leland Bentley held a hearing on August 11, 2020.  Tr. 39-59.  Mr. Holtry appeared in person at the hearing with attorney representative Gary Martone.[3] *Id*.  On September 16, 2020, ALJ Bentley issued a partially favorable decision.[4]  Tr. 9-31.  On December 22, 2020, the Appeals Council issued its decision denying Mr. Holtry's request for

---

[3] Mr. Holtry is represented in these proceedings by Attorney Feliz Martone.  Doc. 1.

[4] The ALJ explained that

> [b]eginning on September 12, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).  Beginning on the date the claimant's age category changed, considering the claimant's age, education, and work experience, a finding of "disabled" is reached by direct application of Medical-Vocational Rule 202.06.

Tr. 30-31.  (Rule 202.06 applies when the claimant is of advanced age (55 years old or older), does not have any transferable skills from previous work experience, and is a "high school graduate or more [that] does not provide for direct entry into skilled work." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.)

Thus, the ALJ determined that Mr. Holtry was disabled as of September 12, 2020, thereby qualifying him for SSI benefits, but that Mr. Holtry was not disabled as of his date of last insured and, therefore, did not qualify for disability insurance benefits.  To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before his date of last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

review and upholding the ALJ's final decision. Tr. 1-6. On February 12, 2021, Mr. Holtry timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b).

>F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
>(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4) (disability insurance benefits), 416.920(a)(4) (supplemental security benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

4

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. Analysis

#### A. ALJ Determination

The ALJ made his decision that Mr. Holtry was not disabled prior to September 12, 2020, at step five of the sequential evaluation.[6] Tr. 29-31. The ALJ determined that Mr. Holtry met the insured status requirements of the Social Security Act through June 30, 2019, and that he had not engaged in substantial gainful activity from his amended alleged onset date of March 15, 2018. Tr. 15. He found that Mr. Holtry had severe impairments of insulin-dependent diabetes mellitus type II, peripheral neuropathy, gunshot wound of the left lower extremity, major depressive disorder, generalized anxiety disorder, and PTSD. Tr. 16. The ALJ also found that Mr. Holtry had nonsevere impairments of right shoulder rotator cuff tendinitis/bursitis, mild

---

[6] *See* fn. 4, *supra*.

shoulder degenerative joint disease, old acromioclavicular separation, mild nonproliferative diabetic retinopathy, and bilateral nuclear sclerosis. Tr. 16-17. The ALJ determined, however, that Mr. Holtry's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 17-20. Accordingly, the ALJ proceeded to step four and found that Mr. Holtry had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional climbing of ramps and stairs; no climbing of ladders or scaffolding; occasional stooping, kneeling, crouching, and crawling; and frequent handling and fingering bilaterally. He is able to understand, remember, and apply simple, routine instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple, routine work tasks with routine supervision. He is able to interact and respond appropriately to others in a stable work setting. However, he would be limited to occasional work-related interaction with the general public. He is able to adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually.

Tr. 21. The ALJ determined that since March 15, 2018, Mr. Holtry could not perform any of his past relevant work, but that considering Mr. Holtry's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[7] Tr. 29-30. The ALJ, therefore, concluded that Mr. Holtry was not disabled prior to September 12, 2020. *Id.*

In support of his Motion, Mr. Holtry argues that the ALJ found at step three that Mr. Holtry had *moderate* limitations in his ability to concentrate, persist and maintain pace, but failed to account for these limitations at step four. Doc. 27 at 2 6-8. Mr. Holtry further argues that the ALJ found at step three that Mr. Holtry had *moderate* limitations in his ability to interact

---

[7] The vocational expert testified that Mr. Holtry would be able to perform the requirements of representative occupations such as a Housekeeping Cleaner, DOT 323.687-014, which is performed at the light exertional level with an SVP of 2 (220,000 jobs in national economy); a Marker, DOT 209.587-034, which is performed at the light exertional level with an SVP of 2 (124,000 jobs in the national economy); and a Small Products Assembler, DOT 706.684-022, which is performed at the light exertional level with an SVP of 2 (198,000 jobs in the national economy). Tr. 30.

6

with others, but similarly failed to account for how the evidence supports the RFC that Mr. Holtry "is able to interact and respond appropriately to others in a stable work setting" and would be "limited to occasional work-related interaction with the general public." *Id.*

The Commissioner contends that substantial evidence supports the ALJ's decision that Mr. Holtry could work under limited circumstances that took his mental problems into account. Doc. 31 at 4-7. The Commissioner further contends that the ALJ was not required to incorporate step three findings into his RFC analysis and that the ALJ properly considered the mental impairments he found at step two when he made his RFC assessment at step four. *Id.* at 7-10.

For the reasons discussed below, the Court finds that the ALJ properly considered and accounted for Mr. Holtry's moderate limitations in assessing Mr. Holtry's ability to do work-related mental activities at step four. As such, there is no error and the ALJ's determination is affirmed.

B.   **Legal Standard**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[8] In assessing a claimant's RFC, the ALJ must consider the combined

---

[8] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5845, 5867, 5869.

effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2). If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

At step two of the sequential evaluation process, the ALJ evaluates the effect of a claimant's mental impairments using a "special technique" to determine whether the mental impairment is "severe" or "not severe." *Wells*, 727 F.3d at 1064. In applying this "special technique," the ALJ rates the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). The ALJ uses a five-point scale to rate the degree of limitation, *i.e.,* none, mild, moderate, marked, and extreme, with the last point on the scale representing a degree of limitation that is incompatible with the

ability to do any gainful activity.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4).  The regulations further explain that

> [a]fter we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . .
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). See paragraph (e) of this section.
>
> (3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

20 C.F.R. §§ 404.1520a(d) and 416.920a(d).

Thus, the criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and . . . "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Wells,* 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *4, *7).  In addition, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7.

9

### C. The ALJ Properly Considered Step Three Moderate Limitations in His Step Four RFC Assessment

Mr. Holtry argues that the ALJ made certain findings at step three when rating the degree of Mr. Holtry's mental impairments that he failed to properly account for at step four of the sequential evaluation when making the RFC assessment. The Court is not persuaded.

Here, the ALJ found at step two that Mr. Holtry had severe mental impairments of major depressive disorder, generalized anxiety disorder and PTSD. Tr. 16. At step three of the determination, the ALJ found that Mr. Holtry's severe impairments did not meet a listing. Tr. 17-21. As part of his step three discussion, the ALJ rated Mr. Holtry's degree of limitation in each of the four broad functional areas. *Id.* Specific to the issues raised here, the ALJ rated Mr. Holtry's degree of limitation in the areas of (1) concentration, persistence or maintaining pace and (2) social interaction as *moderate*. *Id.* Pursuant to the applicable regulations and Tenth Circuit case law, the ALJ was then required to consider how Mr. Holtry's mental impairments affected his ability to do work-related mental activities in formulating the RFC at step four. The ALJ's failure to do so would constitute error.

Contrary to Mr. Holtry's argument, however, the Court finds that the ALJ's RFC assessment at step four includes a narrative discussion of the medical evidence record and describes how the evidence supports his conclusions regarding Mr. Holtry's ability to do work-related mental activities. To begin, at the "more detailed" step four assessment, the ALJ discussed the medical opinion evidence related to Mr. Holtry's ability to do work-related mental activities. For example, the ALJ discussed the findings of State agency consultative examiner Justin Beatty, M.D.,[9] who assessed that Mr. Holtry had *mild limitations* in his ability to

---

[9] On March 7, 2019, Mr. Holtry presented to examining State agency psychological consultant Justin Beatty, M.D., for a mental status examination. Tr. 604-06. Mr. Holtry presented with complaints of PTSD, anxiety, depression and dyslexia. *Id.* Dr. Beatty noted various histories, *i.e.,* current and past medical, current and past psychiatric,

(1) understand and remember complex instructions, (2) complete instructions, (3) concentrate, and (4) persist at tasks; and *moderate limitations* in his ability to interact with coworkers and the public. Tr. 26-27. The ALJ discussed the nonexamining State agency psychological consultants' assessment that Mr. Holtry could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for a significant length of time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting."[10] Tr. 28. The ALJ also discussed various treatment notes from The

---

educational, developmental, psychosocial, medication, and employment. *Id.* On mental status exam, Dr. Beatty indicated Mr. Holtry was pleasant and cooperative; showed no psychomotor agitation or slowing; had normal speech; had appropriate eye contact; had adequate memory, attention and concentration for the interview; had logical and goal-directed thought processes; had fair insight and judgment; had a euthymic affect and reported an "okay" mood. Tr. 606. Dr. Holtry assessed generally that

> [t]his is a 53-year old male with history and current presentation consistent with PTSD, depression with psychotic features. He has additional medical history by report of DM and diabetic neuropathy which he alleges are also contributing to his disability. PTSD and depression significantly impair his ability to interact with others. He has very low energy and poor motivation. Because of this, he is likely to struggle with interpersonal relationships with coworkers as well as employers leading to significant conflict. He is unlikely to do well in any job that requires him to be around large groups of people or loud noises. Due to these combined factors it is unlikely that he will be able to support himself through employment now or in the near future. However, with adequate treatment for PTSD and depression, including medication management and therapy, his prognosis is fair. He is currently in therapy, though I recommend he pursue therapy targeted at PTSD symptoms such as EMDR or prolonged exposure therapy. He also has an appointment to establish care with a psychiatrist for evaluation for medication management. . . .

Tr. 607. Dr. Beatty specifically assessed that Mr. Holtry had *mild limitations* in his ability to (1) understand and remember complex instructions; (2) complete instructions; (3) concentrate; and (4) persist at tasks; and *moderate limitations* in his ability to (1) interact with the public; (2) interact with peers at work; (3) work without supervision; and (4) adapt to changes at work. Tr. 608 (emphasis added).

The ALJ found Dr. Beatty's opinion partially persuasive. Tr. 27. In doing so, the ALJ discussed that certain of Mr. Holtry's subjective complaints to Dr. Beatty were undermined by Mr. Holtry's reports to his primary care provider that his sleep was adequate, he had a good appetite and energy level, and that he had good health and was in good spirits; that the medical evidence record demonstrated inconsistent reports to other providers of Mr. Holtry having and/or not having auditory and visual hallucinations; that the medical evidence record demonstrated largely unremarkable mental status examinations; and Mr. Holtry's "own statements that he has no difficulty getting along with others and is able to go out alone in public." Tr. 27.

[10] On March 15, 2019, nonexamining State agency psychological consultant Mark McGaughey, Ph.D., reviewed the medical evidence record at the initial level of consideration. Tr. 97-99, 102-04, 114-15, 118-20. Dr. McGaughey prepared a Psychiatric Review Technique and rated the degree of Mr. Holtry's functional limitation in the area of understanding, remembering or applying information as *mild*; in the area of interacting with others as *moderate*; in the area of maintaining concentration, persistent and pace as *moderate*; and in the area of adaptation as *moderate*. *Id.* Dr. McGaughey also prepared a Mental Residual Functional Capacity Assessment in which he found in Section I that

Evolution Group and Rio Grande Counseling and Guidance Services, organizations where Mr. Holtry sought and received mental health care services. Tr. 25-26. The ALJ, therefore, reviewed and evaluated the medical opinion evidence at step four,[11] and discussed the medical evidence record related to Mr. Holtry's mental impairments.

Having considered Dr. Beatty's assessed mild limitation with respect to Mr. Holtry's ability to concentrate and persist along with the nonexamining State agency psychological consultants' findings of moderate limitations in this area, the ALJ assessed that Mr. Holtry could "concentrate and persist for extended periods *in order to complete simple, routine work tasks*."[12]

---

Mr. Holtry had *moderate limitations* in ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration or extended periods; (4) work in coordination with or in proximity to others without being distracted by them; (5) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) ability to accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting. *Id.*

In Section III, Dr. McGaughey assessed that

> Overall evidence supports that claimant retains the capacity to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for a significant length of time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

*Id.*

On August 5, 2019, nonexamining State agency psychological consultant Laurie Clemens, Ph.D., reviewed the medical record evidence at reconsideration. Tr. 134-36, 140-42, 153-54, 158-60. Her PRT ratings and MRFCA findings and assessment are identical to Dr. McGaughey's. *Id.*

The ALJ found the assessments of Dr. McGaughey and Dr. Clemens partially persuasive. Tr. 28. The ALJ found their assessments that Mr. Holtry could understand, remember, and apply simple, routine instructions, make simple work-related decisions, and concentrate and persist for extended periods in order to complete simple, routine work tasks were consistent with the objective mental status examination findings. Tr. 28. The ALJ found that their Section I "moderate" limitations related to the interacting with other and adapting and managing oneself "failed to include corresponding limitations in the MRFCA assessment." *Id.* The ALJ explained that based on Mr. Holtry's statements that he "is able to go out into public, such as church, going out to eat, and shopping, and his statements that he has no difficulty getting along with others, with cooperative interaction on mental status examination," that Mr. Holtry was able to interact and respond appropriately to others in a stable work setting, but should be limited to occasional work-related interaction with the general public. *Id.*

[11] *See* fns. 10 and 11, *supra*.

[12] *See* fn. 13, *infra*.

Tr. 21 (emphasis added). The ALJ explained that his assessment was largely consistent with the evidence he discussed.[13] Tr. 27.

The ALJ also considered Dr. Beatty's and the nonexamining State agency psychological consultants' findings that Mr. Holtry had moderate limitations in his ability to interact with coworkers or peers and the general public. Tr. 26-28. The ALJ explained that the nonexamining Stage agency psychological consultants' resulting assessment based on their moderate limitations related to social interaction, *i.e.,* that Mr. Holtry could "interact adequately with co-workers and supervisors," had "failed to include corresponding limitations in the mental residual functional capacity assessment." Tr. 28. The ALJ cited evidence of Mr. Holtry's own statements regarding being a loner, getting along with others, going out alone in public, attending church after which he would go out to eat, and having cooperative interaction on mental status examination. *Id.* The ALJ ultimately assessed that Mr. Holtry had the ability to respond appropriately to others in a stable work setting and should be limited to occasional work-related interaction with the general public.[14] [15]

---

[13] Tenth Circuit case law supports that limiting a claimant to unskilled work properly accounts for moderate limitations in the ability to concentrate, persist and maintain pace. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (holding that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a restriction to unskilled work). In *Vigil*, the ALJ found at step three that the claimant was moderately limited in the ability to maintain concentration for extended periods. *Id.* at 1203. At the "more detailed" step four assessment of the claimant's RFC, the ALJ in *Vigil* found some evidence indicating that the claimant had some problems with concentration, persistence, and pace "such that [he] could not be expected to perform complex tasks." *Id.* The ALJ in *Vigil* further found that "the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that Vigil retain[ed] enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04. The Court reasoned that the ALJ's RFC limiting claimant to unskilled work was appropriate in that case because the Social Security Administration's Program Operations Manual System indicated that the capacity to perform unskilled work includes the ability to maintain attention for extended periods of two-hour segments, but that concentration is "not critical." *Id.* at 1204.

[14] Unskilled work generally requires . . . "[r]esponding appropriately to supervisors, co-workers and usual work situations." *Vigil*, 805 F.3d at 1204 (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).

[15] Appendix B of the DOT specifies that the fourth, fifth, and sixth digits of the code reflect "relationships to Data, People, and Things, respectively ... [and] express a job's relationship to Data, People and Things by identifying the highest appropriate function in each listing shown." *Appendix B—Explanation of Data, People, and Things*, 1991 WL

Notably, Mr. Holtry does not dispute the substance of the ALJ's discussion of the medical evidence record or the ALJ's analysis and evaluation of the medical opinion evidence, but instead argues only that the ALJ failed to discuss his step three findings when making his RFC assessment at step four.  The ALJ's narrative discussion of the evidence at step four and how the evidence supports his RFC assessment, however, undermines Mr. Holtry's argument. The Court, therefore, finds no error.

## IV.  Conclusion

For the reasons stated above, Mr. Holtry's Motion to Reverse and Remand, With Supporting Memorandum (Doc. 27) is **DENIED**.

*[signature: John F. Robbenhaar]*

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**

---

688701. The "People" category has a range from zero to eight, with zero requiring the highest level of human interaction and eight requiring the lowest. *Id.*; *see also Lane v. Colvin*, 643 F. App'x 766, 770, n. 1 (10th Cir. 2016). The DOT specifies that eight corresponds to a worker function of "Taking Instructions—Helping," which is defined as "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)  Helping applies to 'non-learning' helpers." *Appendix B,* 1991 WL 688701. Here, each of the jobs the ALJ identified has a "people" requirement of eight; *i.e.,* the lowest level of human interaction.  *See* fn. 7, *supra*.